# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br>**JOHN P DUNBAR**,<br><br>                       Debtor. | Case No. **10-62401-7** |
| **FIA CARD SERVICES, N.A.**,<br><br>                       Plaintiff.<br>-vs-<br>**JOHN P DUNBAR**,<br><br>                       Defendant. | Adv No. **10-00106** |

# MEMORANDUM OF DECISION

At Butte in said District this 5th day of August, 2011.

In this adversary proceeding the Plaintiff FIA Card Services, N.A. (hereinafter "FIA") filed a complaint claim seeking exception from the Debtor/Defendant John P. Dunbar's ("Dunbar") discharge of $9,000 of cash advances under 11 U.S.C. § 523(a)(2). Dunbar answered denying the material allegations and asserted a counterclaim for attorney's fees and costs pursuant to § 523(d). Trial was scheduled to begin on July 13, 2011. On July 12, 2011, the parties filed a stipulation to dismiss FIA's complaint and consider only Dunbar's counterclaim. On the scheduled trial date the Court heard argument of counsel regarding the counterclaim, and exhibits were admitted. At the conclusion of the hearing the Court took Dunbar's counterclaim under advisement. After review of the record and applicable law, this matter is ready for decision. For the reasons set forth below, a separate Judgment shall be entered against FIA under § 523(d) for Dunbar's attorney's fees and costs in amounts to be determined.

1

FIA was represented at the hearing by attorney Richard S. Ralston ("Ralston") of Weinstein & Riley, P.S., of Seattle, Washington. Dunbar was represented by Harold V. Dye ("Dye") of Dye & Moe, P.L.L.P., Missoula. Ex. A, B, C, D, E, F, G, H, I, J, K, L, M, and 9 were admitted into evidence without objection.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as to the dischargeability of FIA's particular debt. This Memorandum includes the Court's findings of fact and conclusions of law regarding Dunbar's counterclaim under § 523(d) and F.R.B.P. 7052 (applying FED. R. CIV. P. 52 in adversary proceedings).

## BACKGROUND FACTS & PROCEDURAL HISTORY

Many of the facts are not disputed, and are established by the parties' pleadings. In March and April of 2010, Bank of America ("BoA") sent Dunbar offers and checks offering him credit lines totaling $19,000. Ex. A and B. The offers begin by stating in bold print: "Take advantage of this great offer" and then state: "These checks can be a great financial tool to help you pay down your balances faster." Dunbar accepted BoA's offer and incurred $9,563.94 in charges and cash advances by the date he filed his Chapter 7 bankruptcy petition. Dunbar used the cash advances to repay other credit card balances. Ex. D, E, G, J; answer, paragraph 8. Dunbar denied that he incurred the debt when he had no ability or intent to repay, and denied that he obtained the credit by false pretenses, false representations and/or actual fraud. Answer, paragraph 13.

Dunbar filed his Chapter 7 petition on October 4, 2010, asserting total assets valued at $34,673.00 and liabilities totaling $43,005.21, all of which is credit card debt. His largest asset

2

listed on Schedule B is an interest in an IRA with a value stated in the amount of $25,586.00. Schedule F lists BoA as a creditor holding an unsecured nonpriority claim in the amount of $9,563.94 for credit card debt. Schedule I lists no income from employment, and $1,544 per month in social security income. Schedule J lists monthly expenditures totaling $1,950.

Dunbar's Statement of Financial Affairs ("SOFA") states his income from employment or business at item 1 as $4,677 in 2008, nothing in 2009 and $353 in 2010. At item 2 Dunbar lists other income in 2009 in the amount of $34,165 from social security and IRA distributions, and $13,896 from social security in 2010.

On October 21, 2010, attorney Glenn D. Miller ("Miller") of Weinstein & Riley, P.S., sent Dunbar's counsel Dye a letter, Ex. K, stating that "[b]ased on an initial review of this account and our recommendation" FIA[1] is considering filing an objection to discharge based on Dunbar's $9,000 in cash advances incurred in May of 2010, which nearly exhausted the account credit limit. Miller offered Dye alternatives to settle, and asked for evidence from Dunbar of any satisfactory explanation for what "otherwise appears to constitute misuse of a credit card." Dye answered on October 29, 2010, Ex. L. Dye told Miller that BoA had solicited Dunbar with credit to refinance his existing credit card debt, and that Dunbar took advantage of the offer in good faith and did not decide to file bankruptcy until months later. Dye advised Miller that if FIA pursues a dischargeability action, Dunbar will seek sanctions and damages against Miller for making their statement that a sufficient basis exists to object to discharge "with at least reckless disregard of the truth if it was not a complete falsehood." Ex. L.

---

[1] Ex. 10 attached to the complaint states that FIA acquired BoA on 10/20/2006. Dunbar denies that FIA has standing because BoA is the creditor, but with the parties' stipulation to dismiss the complaint that issue is moot.

FIA filed its complaint on December 30, 2010, seeking exception from Dunbar's discharge of the $9,000 debt based on § 523(a)(2). Dunbar filed his answer and counterclaim for attorney's fees and costs under § 523(d) on January 4, 2011.

The parties agree that the debt is a "consumer debt." Answer, paragraph 10. The complaint and answer at paragraph 11 establish that by accepting BoA's offer and incurring charges, Dunbar represented an intention to repay the amounts charged. Dunbar's answer elaborates: "Defendant had every intention to repay BOA when he took out the cash advance." Dunbar denied the allegations of the complaint which state that he obtained credit by false pretenses, false representations or actual fraud. Dunbar also denied the allegations that he had no ability or objective intent to repay the debt when he incurred it.

On April 18, 2011, Ralston sent Dye FIA's responses to Defendant's first requests for production of documents, Ex. M. Other than an account transaction history, which was attached to FIA's complaint, FIA did not produce any documents in response to Dunbar's nine (9) requests for production. FIA's response to the requests, other than No. 1, was either "Not applicable" or:

> Plaintiff has been unable to locate documents responsive to this request, if any exist, at this time. Plaintiff reserves its right to supplement and amend its response to this request within the times provided by the Federal [R]ules of Civil Procedure.

There is no evidence that FIA ever supplemented its responses.

The original trial date was continued, and this Court ordered the proposed agreed pretrial order to be filed by July 11, 2011, and for witness lists and exhibits to be filed and exchanged by July 6, 2011. The parties failed to comply with those deadlines.

# DISCUSSION

**I. Contentions of the Parties.**

After the parties stipulated to dismissal of the complaint, at the hearing on Dunbar's counterclaim Ralston argued that FIA had a "plausible theory" under § 523(a)(2) for exception from Dunbar's discharge at the time FIA filed the complaint based on Dunbar's Schedules, its own account records, and Dye's letter. Ralston admitted that, ordinarily, there is nothing wrong with paying off credit card debt with other credit card debt, but argued that FIA had plausible claims for credit card kiting under § 523(a)(2) based on both actual fraud and implied misrepresentation, because Dunbar was unemployed when he made the credit card charges and made no payments for months.

Dye argued that FIA failed to satisfy its burden of proof under § 523(d) that its position was substantially justified. Dye contended that FIA produced no documents in discovery which supported its position, and that it filed suit without investigation.

**II. § 523(d).**

Fees and costs to a prevailing debtor are provided for in § 523(a)(2) proceedings pursuant to 11 U.S.C. § 523(d) which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

"The purpose of § 523(d) is to deter creditors from bringing frivolous challenges to the discharge of consumer debts. See S.Rep. No. 98-65, at 9-10 (1983)." *First Card v. Hunt (In re*

*Hunt)*, 238 F.3d 1098, 1103-04 (9th Cir. 2001); *Sparks v. King (In re King)*, 258 B.R. 786, 797-98 (Bankr. D. Mont. 2001).

The creditor bears the burden of proving that its position is substantially justified. *Hunt*, 238 F.3d at 1103; *First Card v. Carolan (In re Carolan)*, 204 B.R. 980, 987 (9th Cir. BAP 1996). Ralston's argument that FIA had a "plausible theory" does not equate to or satisfy its burden of proving that its position is "substantially justified." To avoid a fee award, FIA must show that its dischargeability claim had a reasonable basis both in law and in fact. *Carolan*, 204 B.R. at 987 (*quoting*, S.Rep. No. 98-65, at 59); *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (interpreting the "substantially justified" standard under the Equal Access to Justice Act (EAJA), 11 U.S.C. § 2412(d)); *In re King*, 258 B.R. 786, 798 (Bankr. D. Mont. 2001).

In *Hunt* the Ninth Circuit surveyed the cases construing § 523(d) and noted:

> Although such cases indicate that a finding regarding substantial justification need not be based solely on the admissible evidence before the court, the cases do not go so far as to suggest that unsupported allegations in a creditor's pleadings can be sufficient to carry the creditor's burden under § 523(d). Beyond what was admitted at trial, the only evidence that First Card submitted was its counsel's declaration in opposition to Hunt's request for attorney's fees, but that declaration dealt only with the amount of the fees requested.

238 F.3d at 1103.

In the instant case FIA offered little more than the creditor offered in *Hunt*. FIA's counsel referred to its pleading and attached account statement, Dunbar's Schedules and Dye's letter. The Court notes, however, that Dunbar's answer specifically denied that he had the intent to defraud FIA. The account history attached to the complaint proves only what Dunbar admits, i.e, that he incurred the $9,000 in charges and failed to repay.

6

Dye's letter, Ex. L, cannot reasonably be construed as lending any support to FIA's position. Ex. L accuses FIA's counsel of failing to perform the factual investigation required by Rule 9011, and Dye concluded that Miller's statement that FIA had a sufficient basis to object to Dunbar's discharge "was made with at least reckless disregard for the truth if it was not a complete falsehood." Since FIA failed to produce any other documents requested by Dunbar in discovery, for purposes of this matter FIA relied on no other documentary evidence outside of the pleadings, account history and schedules. Ex. K, Miller's letter, refers to "an initial review of this account and our recommendation," but all that reveals is that Dunbar incurred the $9,000 in charges over two days and "nearly exhausted" the credit limit. Those are not sufficient to satisfy FIA's burden of proving that its position was substantially justified.

FIA stipulated to dismiss its dischargeability complaint on the eve of trial, so FIA submitted even less evidence than First Card submitted at trial in *Hunt*. Like the plaintiff in *Hunt*, FIA offered nothing but repeated allegations that the Debtor acted with intent to defraud. Those allegations are set forth in FIA's complaint. Dunbar's answer specifically denied the allegations at paragraphs 11 and 13 that he did not intend to repay the advances.

FIA's proposed pretrial order argues on the fifth page that it had no duty to investigate Dunbar's practices in his use of credit cards, and "the fact scenario presents evidence which makes it reasonable to infer that fraud was committed." In *Hunt* the Ninth Circuit noted:

> The evidence admitted at trial had virtually no tendency to prove that Hunt did not intend to repay First Card. Intent not to repay is central to the actual fraud inquiry in a nondischargeable proceeding under § 523(a)(2)(A). *See,* [*Anastas v. American Savings Bank*, 94 F.3d 1280, 1286 (9th Cir. 1996)] ("[T]he express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt."). *See, generally, Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087-88 (9th Cir.

7

> 1996) (adopting a totality-of-the-circumstances test, including a nonexclusive list of twelve relevant factors, for determining the existence of intent not to repay. Thus, the evidence did not tend to prove that First Card's position was substantially justified. First Card's arguments on appeal or consequently based, not on the evidence, but entirely on First Card's repeated allegations that Hunt "laundered" the money borrowed from First Car through his Wells Fargo account. These allegations, however, find absolutely no support in the record.
>
> Because the burden was on First Card to prove that its position was substantially justified, and because the evidence that First Card submitted did not show that its claim had a reasonable basis in law and fact, the bankruptcy court did not abuse its discretion in finding that First Card's position was not substantially justified.

*Hunt*, 238 F.3d at 1103-04.

FIA's complaint contends that Dunbar incurred the debts when he "had no ability or objective intent to repay them." The first part of that contention is not in accordance with Ninth Circuit law. "We emphasize that the representation made by the card holder in a credit card transaction is not that he has an *ability* to repay the debt; it is that he has an *intention* to repay." *Anastas*, 94 F.3d at 1285 (emphasis in original). Later the court wrote: "While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, . . ., the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith. *Id.* at 1286. Thus, Dunbar's ability to repay does not support FIA's contention that its position was substantially justified.

Ralston admitted that ordinarily there is nothing wrong with paying credit card debt with other credit cards. Indeed, the evidence in Ex. A and B shows that BoA offered Dunbar credit and invited him to "[t]ake advantage of this great offer" "to help you pay down your balances ...." Dunbar accepted, and used the advances to pay down his other credit card balances. Those facts

lend no weight toward satisfying FIA's burden of proof.

Since direct proof of intent to deceive is nearly impossible to obtain, the element of intent may be inferred from proof of surrounding circumstances "if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *Eashai*, 87 F.3d at 1087. The Ninth Circuit adopted the following non-exclusive list of factors from *In re Dougherty*, 84 B.R. 653, 657 (9th Cir. BAP 1988) to be considered in determining the debtor's intent:

1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

*Anastas*, 94 F.3d at 1284 n.1; *Eashai*, 87 F.3d at 1087-88

FIA contends that Dunbar was unemployed when he made the charges. If true that possibly satisfies two of the *Dougherty* factors, 8 and 9, leaving the other ten factors unproven. It appears that five months elapsed between the $9,000 charge on May 5, 2010, and the date Dunbar filed his Chapter 7 petition. There is no evidence that Dunbar consulted an attorney about filing bankruptcy before writing the $9,000 check. Debtor's financial condition in May of 2010 is unproven, but his Schedules reveal that he had an interest in an IRA valued at $25,586, so he had enough assets to pay FIA the $9,000. The $9,000 was not above the credit limit. There is no evidence regarding the Debtor's financial sophistication, although his practice of using

credit card debt to pay off other credit card debt at a lower interest rate demonstrates some financial sophistication. No evidence exists in the record of a sudden change in Dunbar's buying habits. Finally, FIA offered no evidence that Dunbar made the charges for luxuries or necessities.

Having considered the *Dougherty* factors, and the totality of the circumstances, the Court finds that most of the factors weigh against a finding of fraudulent intent, do not give rise to an inference of fraudulent intent, and fail to satisfy FIA's burden of proving that its position was substantially justified.

### III. Special Circumstances.

Section 523(d) includes an exception to the award of fees which states "that the Court shall not award such . . . fees if special circumstances would make the award unjust." *Hunt*, 238 F.3d at 1104. *Hunt* cites *In re Hingson*, 954 F.2d 428, 429-30 (7th Cir. 1992), that the clause "should be interpreted with reference to traditional legal principles" as, for example, "if a debtor could somehow be found to have procured the creditor's groundless claim of fraud, the exception for special circumstances would justify the denial of the debtor's application for attorney's fees." *Hunt*, 238 F.3d at 1104, quoting *Hingson*.

In the instant case FIA sent Dunbar the solicitations in Ex. A and B offering him credit, for the express purpose to help him pay down his balances. No evidence exists in the record that Dunbar in any way procured the creditor's claim of fraud. On the contrary Dye's letter, Ex. L, bluntly describes FIA's statement that it had a sufficient basis to object to discharge as "made with at least reckless disregard of the truth if it was not a complete falsehood." FIA did not heed Dye's warning and initiated the instant adversary proceeding. The Court concludes therefore that

FIA has not shown special circumstances which would justify denial of Dunbar's attorney's fees and costs under § 523(d).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as to the dischargeability of FIA's particular debt.

3. FIA's complaint to determine the dischargeability of its consumer debt under 11 U.S.C. § 523(a)(2) was not substantially justified under 11 U.S.C. § 523(d).

4. FIA failed to show special circumstances which would make an award of reasonable attorney's fees and costs under § 523(d) unjust.

**IT IS ORDERED** a separate Order shall be entered granting Debtor/Defendant's attorney Harold V. Dye fourteen (14) days to file an affidavit of fees and costs incurred in defending this adversary proceeding, and granting the Plaintiff 14 days thereafter to file a response and request a hearing on the reasonableness of Dye's request for fees and costs under 11 U.S.C. § 523(d); and after the response period and any hearing the Court will enter judgment against the Plaintiff FIA Card Services, N.A., in the amount of fees and costs awarded under § 523(d).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana